## GULF OIL CORP. *v.* GILBERT, DOING BUSINESS AS GILBERT STORAGE & TRANSFER CO.

No. 93.  Argued December 18, 19, 1946.—Decided March 10, 1947.

---

[12] The state laws are discussed in Northrup, The Foreman's Association of America, 23 Harv. Bus. Rev. 187, 199–200.

*Archie D. Gray* and *Bernard A. Golding* argued the cause for petitioner. With them on the brief were *John E. Green, Jr.* and *Matthew S. Gibson.*

*Max J. Gwertzman* argued the cause and filed a brief for respondent.

Mr. Justice Jackson delivered the opinion of the Court.

The questions are whether the United States District Court has inherent power to dismiss a suit pursuant to the doctrine of *forum non conveniens* and, if so, whether that power was abused in this case.

The respondent-plaintiff brought this action in the Southern District of New York, but resides at Lynchburg, Virginia, where he operated a public warehouse. He alleges that the petitioner-defendant, in violation of the ordinances of Lynchburg, so carelessly handled a delivery of gasoline to his warehouse tanks and pumps as to cause

an explosion and fire which consumed the warehouse building to his damage of $41,889.10, destroyed merchandise and fixtures to his damage of $3,602.40, caused injury to his business and profits of $20,038.27, and burned the property of customers in his custody under warehousing agreements to the extent of $300,000. He asks judgment of $365,529.77 with costs and disbursements, and interest from the date of the fire. The action clearly is one in tort.

The petitioner-defendant is a corporation organized under the laws of Pennsylvania, qualified to do business in both Virginia and New York, and it has designated officials of each state as agents to receive service of process. When sued in New York, the defendant, invoking the doctrine of *forum non conveniens,* claimed that the appropriate place for trial is Virginia, where the plaintiff lives and defendant does business, where all events in litigation took place, where most of the witnesses reside, and where both state and federal courts are available to plaintiff and are able to obtain jurisdiction of the defendant.

The case, on its merits, involves no federal question and was brought in the United States District Court solely because of diversity in citizenship of the parties. Because of the character of its jurisdiction and the holdings of and under *Erie Railroad Co.* v. *Tompkins,* 304 U. S. 64, the District Court considered that the law of New York as to *forum non conveniens* applied and that it required the case to be left to Virginia courts.[1] It therefore dismissed.

The Circuit Court of Appeals disagreed as to the applicability of New York law, took a restrictive view of the application of the entire doctrine in federal courts and, one judge dissenting, reversed.[2] The case is here on certiorari. 328 U. S. 830.

---

[1] *Gilbert* v. *Gulf Oil Corp.,* 62 F. Supp. 291.

[2] *Gilbert* v. *Gulf Oil Corp.,* 153 F. 2d 883.

## I.

It is conceded that the venue statutes of the United States permitted the plaintiff to commence his action in the Southern District of New York and empower that court to entertain it.[3] But that does not settle the question whether it must do so. Indeed, the doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction or mistake of venue.

This Court, in one form of words or another, has repeatedly recognized the existence of the power to decline jurisdiction in exceptional circumstances. As formulated by Mr. Justice Brandeis, the rule is:

"Obviously, the proposition that a court having jurisdiction must exercise it, is not universally true; else the admiralty court could never decline jurisdiction on the ground that the litigation is between foreigners. Nor is it true of courts administering other systems of our law. Courts of equity and of law also occasionally decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents or where for kindred reasons the litigation can more appropriately be conducted in a foreign tribunal." *Canada Malting Co., Ltd.,* v. *Paterson Steamships, Ltd.,* 285 U. S. 413, 422–23.

We later expressly said that a state court "may in appropriate cases apply the doctrine of *forum non conveniens.*" *Broderick* v. *Rosner,* 294 U. S. 629, 643; *Williams* v. *North Carolina,* 317 U. S. 287, 294, n. 5. Even where federal rights binding on state courts under the Constitution are sought to be adjudged, this Court has sustained state courts in a refusal to entertain a litigation between a nonresident and a foreign corporation or between two foreign corporations. *Douglas* v. *New York, N. H. & H. R. R.,* 279 U. S. 377; *Anglo-American Provision Co.* v.

---

[3] See 28 U. S. C. § 112; *Neirbo Co.* v. *Bethlehem Shipbuilding Corp., Ltd.,* 308 U. S. 165.

*Davis Provision Co. No. 1,* 191 U. S. 373.   It has held the use of an inappropriate forum in one case an unconstitutional burden on interstate commerce.   *Davis* v. *Farmers Co-operative Equity Co.,* 262 U. S. 312.   On substantially *forum non conveniens* grounds we have required federal courts to relinquish decision of cases within their jurisdiction where the court would have to participate in the administrative policy of a state.   *Railroad Commission* v. *Rowan & Nichols Oil Co.,* 311 U. S. 570; *Burford* v. *Sun Oil Co.,* 319 U. S. 315; but *cf. Meredith* v. *Winter Haven,* 320 U. S. 228.   And most recently we decided *Williams* v. *Green Bay & Western R. R. Co.,* 326 U. S. 549, in which the Court, without questioning the validity of the doctrine, held it had been applied in that case without justification.[4]

It is true that in cases under the Federal Employers' Liability Act we have held that plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens.*   But this was because the special venue act under which those cases are brought was believed to require it. *Baltimore & Ohio R. R.* v. *Kepner,* 314 U. S. 44; *Miles* v. *Illinois Central R. R.,* 315 U. S. 698.   Those decisions do not purport to modify the doctrine as to other cases governed by the general venue statutes.

---

[4] The doctrine did not originate in federal but in state courts. · This Court in recognizing and approving it by name has never indicated that it was rejecting application of the doctrine to law actions which had been an integral and necessary part of evolution of the doctrine.   And *cf. Slater* v. *Mexican National R. R.,* 194 U. S. 120. Wherever it is applied in courts of other jurisdictions, its application does not depend on whether the action is at law, *Collard* v. *Beach,* 93 App. Div. 339, 87 N. Y. S: 884; *Murnan* v. *Wabash R. Co.,* 246 N. Y. 244, 158 N. E. 508; *Jackson & Sons* v. *Lumbermen's Mutual Casualty Co.,* 86 N. H. 341, 168 A. 895; or in equity, *Langfelder* v. *Universal Laboratories,* 293 N. Y. 200, 56 N. E. 2d 550; *Egbert* v. *Short,* [1907] 2 Ch. 205.   See footnote 1, *Koster* v. *(American) Lumbermens Mutual Casualty Co.,* decided this day, *post,* p. 518.

But the court below says that "The Kepner case . . . warned against refusal of jurisdiction in a particular case controlled by congressional act; here the only difference is that congressional act, plus judicial interpretation (under the Neirbo case), spells out the result." 153 F. 2d at 885. The Federal Employers' Liability Act, however, which controlled decision in the *Kepner* case, specifically provides where venue may be had in any suit on a cause of action arising under that statute. What the court below refers to as "congressional act, plus judicial interpretation," is the general statute of venue in diversity suits, plus our decision that it gives the defendant "a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election," *Neirbo Co.* v. *Bethlehem Shipbuilding Corp.*, 308 U. S. 165, 168. The Federal Employers' Liability Act, as interpreted by *Kepner,* increases the number of places where the defendant may be sued and makes him accept the plaintiff's choice. The *Neirbo* case is only a declaration that if the defendant, by filing consent to be sued, waives its privilege to be sued at its place of residence, it may be sued in the federal courts at the place where it has consented to be sued. But the general venue statute plus the *Neirbo* interpretation do not add up to a declaration that the court must respect the choice of the plaintiff, no matter what the type of suit or issues involved. The two taken together mean only that the defendant may consent to be sued, and it is proper for the federal court to take jurisdiction, not that the plaintiff's choice cannot be questioned. The defendant's consent to be sued extends only to give the court jurisdiction of the person; it assumes that the court, having the parties before it, will apply all the applicable law, including, in those cases where it is appropriate, its discretionary judgment as to whether the suit should be entertained. In all cases in which the doctrine of *forum non conveniens* comes into

play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them.

## II.

The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute. These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to pursue his remedy. But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment. A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

Many of the states have met misuse of venue by investing courts with a discretion to change the place of trial on various grounds, such as the convenience of witnesses and the ends of justice.[5] The federal law contains no such express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.[6]

---

[5] See Foster, *Place of Trial—Interstate Application of Intrastate Methods of Adjustment,* 44 Harv. L. Rev. 41, 47, 62.

[6] See *Logan* v. *Bank of Scotland,* [1906] 1 K. B. 141; *cf. La Société du Gaz de Paris* v. *La Société Anonyme de Navigation "Les Armateurs Français,"* [1926] Sess. Cas. (H. L.) 13. *Collard* v. *Beach,* 93 App. Div. 339, 87 N. Y. S. 884; *Jackson & Sons* v. *Lumbermen's Mutual Casualty Co.,* 86 N. H. 341, 168 A. 895; see *Pietraroia* v. *New Jersey & Hudson R. R. Co.,* 197 N. Y. 434, 91 N. E. 120; *Great Western Railway Co.* v. *Miller,* 19 Mich. 305.

Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.[7]

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.[8] But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community

[7] See Dainow, *The Inappropriate Forum*, 29 Ill. L. Rev. 867, 889.
[8] See Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Col. L. Rev. 1.

which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

The law of New York as to the discretion of a court to apply the doctrine of *forum non conveniens,* and as to the standards that guide discretion is, so far as here involved, the same as the federal rule. *Murnan* v. *Wabash R. Co.,* 246 N. Y. 244, 158 N. E. 508; *Wedemann* v. *United States Trust Co.,* 258 N. Y. 315, 179 N. E. 712; see *Gregonis* v. *Philadelphia and Reading Co.,* 235 N. Y. 152, 139 N. E. 223. It would not be profitable, therefore, to pursue inquiry as to the source from which our rule must flow.

## III.

Turning to the question whether this is one of those rather rare cases where the doctrine should be applied, we look first to the interests of the litigants.

The plaintiff himself is not a resident of New York, nor did any event connected with the case take place there, nor does any witness, with the possible exception of experts, live there. No one connected with that side of the case save counsel for the plaintiff resides there, and he has candidly told us that he was retained by insurance companies interested presumably because of subrogation. His affidavits and argument are devoted to controverting claims as to defendant's inconvenience rather than to showing that the present forum serves any convenience

of his own, with one exception. The only justification for trial in New York advanced here is one rejected by the district court and is set forth in the brief as follows:

"This Court can readily realize that an action of this type, involving as it does a claim for damages in an amount close to $400,000, is one which may stagger the imagination of a local jury which is surely unaccustomed to dealing with amounts of such a nature. Furthermore, removed from Lynchburg, the respondent will have an opportunity to try this case free from local influences and preconceived notions which may make it difficult to procure a jury which has no previous knowledge of any of the facts herein."

This unproven premise that jurors of New York live on terms of intimacy with $400,000 transactions is not an assumption we easily make. Nor can we assume that a jury from Lynchburg and vicinity would be "staggered" by contemplating the value of a warehouse building that stood in their region, or of merchandise and fixtures such as were used there, nor are they likely to be staggered by the value of chattels which the people of that neighborhood put in storage. It is a strange argument on behalf of a Virginia plaintiff that the community which gave him patronage to make his business valuable is not capable of furnishing jurors who know the value of the goods they store, the building they are stored in, or the business their patronage creates. And there is no specification of any local influence, other than accurate knowledge of local conditions, that would make a fair trial improbable. The net of this is that we cannot say the District Court was bound to entertain a provincial fear of the provincialism of a Virginia jury. That leaves the Virginia plaintiff without even a suggested reason for transporting this suit to New York.

Defendant points out that not only the plaintiff, but every person who participated in the acts charged to be negligent, resides in or near Lynchburg. It also claims a need to interplead an alleged independent contractor which made the delivery of the gasoline and which is a Virginia corporation domiciled in Lynchburg, that it cannot interplead in New York. There also are approximately 350 persons residing in and around Lynchburg who stored with plaintiff the goods for the damage to which he seeks to recover. The extent to which they have left the community since the fire and the number of them who will actually be needed is in dispute. The complaint alleges that defendant's conduct violated Lynchburg ordinances. Conditions are said to require proof by firemen and by many others. The learned and experienced trial judge was not unaware that litigants generally manage to try their cases with fewer witnesses than they predict in such motions as this. But he was justified in concluding that this trial is likely to be long and to involve calling many witnesses, and that Lynchburg, some 400 miles from New York, is the source of all proofs for either side, with possible exception of experts. Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants. Nor is it necessarily cured by the statement of plaintiff's counsel that he will see to getting many of the witnesses to the trial and that some of them "would be delighted to come to New York to testify." There may be circumstances where such a proposal should be given weight. In others, the offer may not turn out to be as generous as defendant or court might suppose it to be. Such matters are for the District Court to decide in exercise of a sound discretion.

The court likewise could well have concluded that the task of the trial court would be simplified by trial in Vir-

ginia.   If trial was in a state court, it could apply its own law to events occurring there.   If in federal court by reason of diversity of citizenship, the court would apply the law of its own state in which it is likely to be experienced.   The course of adjudication in New York federal court might be beset with conflict of laws problems all avoided if the case is litigated in Virginia where it arose.

We are convinced that the District Court did not exceed its powers or the bounds of its discretion in dismissing plaintiff's complaint and remitting him to the courts of his own community.   The Circuit Court of Appeals took too restrictive a view of the doctrine as approved by this Court.   Its judgment is

*Reversed.*

Mr. Justice Reed and Mr. Justice Burton dissent. They do not set out the factual reasons for their dissent since the Court's affirmance of *Koster* v. *Lumbermens Mutual Casualty Co.,* decided today, *post,* p. 518, would control.

Mr. Justice Black, dissenting.

The defendant corporation is organized under the laws of Pennsylvania, but is qualified to do business and maintains an office in New York.   Plaintiff is an individual residing and doing business in Virginia.   The accident in which plaintiff alleges to have been damaged occurred in Lynchburg, Virginia.   Plaintiff brought this action in the Federal District Court in New York.   Section 11 of the Judiciary Act of 1789, 1 Stat. 78, carried over into the Judicial Code, § 24, 28 U. S. C. § 41 (1), confers jurisdiction upon federal district courts of all actions at law between citizens of different states.   The Court does not suggest that the federal district court in New York lacks jurisdiction under this statute or that the venue was improper in this case.   28 U. S. C. § 112.   *Cf. Neirbo Co.* v.

*Bethlehem Corp.,* 308 U. S. 165. But it holds that a district court may abdicate its jurisdiction when a defendant shows to the satisfaction of a district court that it would be more convenient and less vexatious for the defendant if the trial were held in another jurisdiction. Neither the venue statute nor the statute which has governed jurisdiction since 1789 contains any indication or implication that a federal district court, once satisfied that jurisdiction and venue requirements have been met, may decline to exercise its jurisdiction. Except in relation to the exercise of the extraordinary admiralty and equity powers of district courts, this Court has never before held contrary to the general principle that "the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *Hyde* v. *Stone,* 20 How. 170, 175, quoted with approval in *Chicot County* v. *Sherwood,* 148 U. S. 529, 534. See also *Dennick* v. *Railroad Co.,* 103 U. S. 11; *Baltimore & O. R. Co.* v. *Kepner,* 314 U. S. 44; *Evey* v. *Mexican C. R. Co.,* 81 F. 294.[1] Never until today has this Court held, in actions for money damages for violations of common law or statutory rights, that a district court can abdicate its statutory duty to exercise its jurisdiction for the alleged convenience of the defendant to a lawsuit. Compare *Slater* v. *Mexican National R. Co.,* 194 U. S. 120.

For reasons peculiar to the special problems of admiralty and to the extraordinary remedies of equity, the courts exercising admiralty and equity powers have been per-

---

[1] In *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1, 58, it was stated that: "The existence of the jurisdiction creates an implication of duty to exercise it, and that its exercise may be onerous does not militate against that implication." *Cf. Douglas* v. *New York, N. H. & H. R. Co.,* 279 U. S. 377, 388.

mitted at times to decline to exercise their jurisdiction. *Canada Malting Co.* v. *Paterson S. S. Co.,* 285 U. S. 413; *Rogers* v. *Guaranty Trust Co.,* 288 U. S. 123; *cf. Williams* v. *Green Bay & W. R. Co.,* 326 U. S. 549. This exception is rooted in the kind of relief which these courts grant and the kinds of problems which they solve. See *Meredith* v. *Winter Haven,* 320 U. S. 228, 235; *Burford* v. *Sun Oil Co.,* 319 U. S. 315, 333 n. 29. Courts of equity developed to afford relief where a money judgment in the common law courts provided no adequate remedy for an injured person.[2] From the beginning of equitable jurisdiction up to now, the chancery courts have generally granted or withheld their special remedies at their discretion; and "courts of admiralty . . . act upon enlarged principles of equity." *O'Brien* v. *Miller,* 168 U. S. 287, 297. But this Court has, on many occasions, severely restricted the discretion of district courts to decline to grant even the extraordinary equitable remedies. *Meredith* v. *Winter Haven, supra,* and cases there cited at 234, 235. Previously federal courts have not generally been allowed the broad and indefinite discretion to dispose even of equity cases solely on a trial court's judgment of the relative convenience of the forum for the parties themselves. For a major factor in these equity decisions has been the relative ability of the forum to shape and execute its equitable remedy. *Cf. Rogers* v. *Guaranty Trust Co., supra.*

---

[2] Although the distinction between actions at law and suits in equity in federal courts has been abolished by the adoption of the single form of civil action, Rule 2, F. R. C. P., see 1 Moore, Federal Practice (1938) c. 2, there remains to federal courts the same discretion, no more and no less, in the exercise of special equitable remedies as existed before the adoption of the federal rules. Neither the rules, the statutes, tradition, nor practical considerations justify application of equitable discretion to actions for money judgments based on common law or statutory rights.

No such discretionary authority to decline to decide a case, however, has, before today, been vested in federal courts in actions for money judgments deriving from statutes or the common law.[3]  To engraft the doctrine of *forum non conveniens* upon the statutes fixing jurisdiction and proper venue in the district courts in such actions, seems to me to be far more than the mere filling in of the interstices of those statutes.[4]

It may be that a statute should be passed authorizing the federal district courts to decline to try so-called common law cases according to the convenience of the parties.  But whether there should be such a statute, and determination of its scope and the safeguards which should surround it, are, in my judgment, questions of policy which Congress should decide.   There are strong arguments presented by the Court in its opinion why federal courts exercising their common law jurisdiction should have the discretionary powers which equity courts have always possessed in dispensing equitable relief.   I think equally strong arguments could be advanced to show that they should not. For any individual or corporate defendant who does part of his business in states other than the one in which he

---

[3] This Court, whose jurisdiction is primarily appellate, has held that it need not exercise its constitutionally granted original jurisdiction even at common law where there is another suitable forum. *Georgia* v. *Pennsylvania R. Co.*, 324 U. S. 439, 464–65.  But the Constitution, not Congress, fixes this Court's jurisdiction.   And it was this Court's duty to interpret its constitutional jurisdiction.   It is the duty of Congress to fix the jurisdiction of the district courts by statute.   It did so.   It is not the duty of this Court to amend that statute.

[4] "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially; they are confined from molar to molecular motions."   Holmes, J., dissenting in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 218, 221.   See also dissenting opinion, *State Tax Commission* v. *Aldrich*, 316 U. S. 174, 185, 202, n. 23 and authorities there collected.

is sued will almost invariably be put to some inconvenience to defend himself. It will be a poorly represented multistate defendant who cannot produce substantial evidence and good reasons fitting the rule now adopted by this Court tending to establish that the forum of the action against him is most inconvenient. The Court's new rule will thus clutter the very threshold of the federal courts with a preliminary trial of fact concerning the relative convenience of forums. The preliminary disposition of this factual question will, I believe, produce the very kind of uncertainty, confusion, and hardship which stalled and handicapped persons seeking compensation for maritime injuries following this Court's decision in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205. The broad and indefinite discretion left to federal courts to decide the question of convenience from the welter of factors which are relevant to such a judgment, will inevitably produce a complex of close and indistinguishable decisions from which accurate prediction of the proper forum will become difficult, if not impossible. Yet plaintiffs will be asked "to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere." *Davis* v. *Dept. of Labor & Industries,* 317 U. S. 249, 254.

This very case illustrates the hazards of delay. It must be begun anew in another forum after the District Court, the Circuit Court of Appeals, and now this Court, have had their time-consuming say as to the relative convenience of the forum in which the plaintiff chose to seek redress. Whether the statute of limitations has run

against the plaintiff, we do not know. The convenience which the individual defendant will enjoy from the Court's new rule of *forum non conveniens* in law actions may be thought to justify its inherent delays, uncertainties, administrative complications and hardships. But in any event, Congress has not yet said so; and I do not think that this Court should, 150 years after the passage of the Judiciary Act, fill in what it thinks is a deficiency in the deliberate policy which Congress adopted.[5] Whether the doctrine of *forum non conveniens* is good or bad, I should wait for Congress to adopt it.

MR. JUSTICE RUTLEDGE joins in this opinion.

---

[5] The very law review articles which are relied upon to document this theory of a federal rule of *forum non conveniens* reveal that judicial adoption of this theory without a new act of Congress would be an unwarranted judicial innovation. Foster, *Place of Trial—Interstate Application of Intrastate Methods of Adjustment*, 44 Harv. L. Rev. 41, 52; Blair, *The Doctrine of Forum Non Conveniens in Anglo-American Law*, 29 Col. L. Rev. 1, 18. For instance, it is stated that "No matter how little dispute there is as to the desirability of such legislation, there is comparatively little chance of overcoming legislative inertia and securing its passage unless some accident happens to focus attention upon it. The best hope is that the courts will feel free to take appropriate action without specific legislation authorizing them to do so." Foster, *supra* at 52.